287 So.2d 299 (1973)
Ernest E. TOLVANEN, Petitioner,
v.
EASTERN AIR LINES and Employers Insurance of Wausau, Respondents.
EASTERN AIR LINES, INC., Employer, and American Motorists Insurance Company, Carrier, Petitioners,
v.
Ernest E. TOLVANEN, Claimant, et al., Respondents.
Nos. 43657, 43667.
Supreme Court of Florida.
November 14, 1973.
Rehearing Denied January 15, 1974.
Philip M. Gerson, Miami, for petitioner, Ernest E. Tolvanen.
Summers Warden, Coral Gables, for petitioners, Eastern Air Lines, Inc., employer, and American Motorists Ins. Co., carrier.
Charles E. Kelley and W.L. Adams, of Wicker, Smith, Pyszka, Blomqvist & Davant, Miami, for respondents, Eastern Air Lines, Inc., and Employers Ins. of Wausau.
Rehearing Denied January 15, 1974 in No. 43657.
ERVIN, Justice.
This is a certiorari review of the abovestyled cases which were consolidated here because both relate to the same final order of the Judge of Industrial Claims that was reversed by the Industrial Relations Commission.
It appears from the JIC's final order claimant Ernest E. Tolvanen, while working as a mechanic for his employer, Eastern Air Lines, suffered two compensable industrial accidents, injuring his back on April 1, 1969 and on June 2, 1970. The JIC awarded claimant benefits for 25 per cent permanent partial disability, apportioned equally between the two accidents, and other benefits.
The order reflects two workmen's compensation carriers of Eastern Air Lines *300 were involved: (1) Employers Insurance Company of Wausau, the Eastern Air Lines workmen's compensation carrier at the time of the 1969 accident, and (2) American Motorists Insurance Company, the Eastern Air Lines workmen's compensation carrier at the time of the 1970 accident.
Eastern and carrier Wausau sought Industrial Relations Commission review of the JIC order. The Commission reversed and remanded "for further proceedings not inconsistent with the views and discussion contained herein," saying:
"The Judge has not indicated what evidence or testimony he relied on to arrive at a 50/50 contribution of responsibility for the temporary total disability, medical bills ... [etc.]. His findings of fact on this issue are simply inadequate. The Judge must go beyond a mere statement that he considered all evidence as well as the credibility of the witnesses and resolved all conflicts. He must indicate the evidence upon which he relies for a particular finding although he need not recite the evidence itself. This Commission should not and will not sift through the record in order to marshal support for the Judge's Order." (Emphasis supplied.)
Claimant and Eastern and its carrier American Motorists Insurance Company seek reversal here of the Commission order, while Eastern and its carrier Employers Insurance of Wausau seek affirmance of the Commission order of reversal.
We have carefully considered the briefs and oral arguments of the parties and have sifted through the record. We deem that the best interests of justice to be quashal of the Commission order of reversal and reinstatement of the JIC order.
Dr. George Richards, claimant's treating physician, first saw the claimant when he was referred by the employer on August 26, 1970. Dr. Richards diagnosed claimant's condition as a herniated intervertebral disc in the left lumbar region. Dr. Richards hospitalized the claimant and corrective surgery was performed which confirmed the doctor's original diagnosis. Dr. Richards stated that claimant's condition was the result of a series of injuries which included as contributing causes both industrial accidents. He stated further that such disability conditions as the claimant's usually are the result of degenerative changes over a long period of time rather than the product of a single traumatic event. In Dr. Richards' opinion claimant would not have the condition he diagnosed without both industrial accidents. He further expressed his opinion that the claimant reached maximum medical improvement on July 1, 1971 and now has a 15 per cent permanent partial disability of the body as a whole, 5 per cent of which he attributed to the April 1969 accident, and the remainder of 10 per cent to the June 1970 accident.
Dr. Bret Lusskin, an examining physician, saw the claimant on April 1, 1971, May 25, 1971, and July 20, 1971. His post-surgery diagnosis was a herniated nucleus pulposus at the lumbosacral level. Dr. Lusskin testified that both injuries were competent producing causes of the treatment necessary and the ultimate disability of the claimant. In Dr. Lusskin's judgment the June 1970 injury caused claimant's symptoms to become severe enough to require surgery. Dr. Lusskin expressed his opinion that claimant reached maximum medical improvement on July 1, 1971. In his judgment the claimant has a 25 per cent permanent partial disability of the body as a whole. Dr. Lusskin concluded that he is unable to apportion claimant's disability between the two accidents. He stated further that the claimant needs further medical care and should limit his conduct to exclude vigorous activity, heavy lifting, and tasks which require accurate balance.
From these ultimate facts the JIC determined claimant has a 25 per cent permanent partial disability attributable equally *301 to the two accidents. He has drawn sufficient inference from these facts to make an apportionment as between the two accidents and their respective contribution to claimant's permanent partial disability. He did not, of course, make an apportionment within the contemplation of F.S. Section 440.02(19), F.S.A., which was not applicable.
In our view it was not necessary in this case  if in fact it was possible at all  have exact medical opinions setting forth the percentage of apportionment due to each of claimant's accidents. Dr. Lusskin (whose opinion the JIC followed) was unable to apportion the disability because he only saw the claimant following his injuries. Similarly, Dr. Richards could only rely upon the history given to him by claimant of the two accidents. Actually, the only thing that Dr. Richards would opine with any degree of certainty was that claimant had a 15 per cent permanent impairment "as a result of whatever it was."
The JIC had before him inconclusive medical evidence upon which to make an exact apportionment between the two accidents. However, he had the claimant before him, his testimony as well as all the other evidence. It is doubtful that on remand additional medical evidence other than the very speculative kind could be secured to aid the JIC in better determining an apportionment. In the meantime claimant is delayed payment of his compensation because of this dispute between the two carriers. This is hardly the administrative expedition of workmen's compensation claims that the statute mandates the Commission to provide.
We conclude there is no violation of F.S. Section 440.25(c), F.S.A. in the JIC's order in his findings of ultimate facts and prescribing a 50/50 apportionment of responsibility for the workmen's compensation payments as between the two carriers for the two accidents. The JIC stated he made his findings based upon a consideration of the record and all of the evidence, along with the credibility of the witnesses. He recited a brief history of claimant's two accidents, the continuing disability they caused him, his hospitalization and surgery, the aggravating and accelerating effects of the second accident, and the length of time claimant was temporarily totally disabled. Claimant did not attain maximum medical improvement until July 20, 1971 "from injuries sustained in both of his industrial accidents."
The JIC concluded the effects of two accidents should be considered together and that as far as he could reasonably determine from the record each contributed an equal result of disability from and after the second accident of June 2, 1970. He stated in conclusion: "Claimant has sustained a 25% permanent partial impairment of the body as a whole as a direct and proximate result of the compensable accidents herein."
The JIC has broad discretion in considering evidence. Crowell v. Messana Contractors, Fla. 1965, 180 So.2d 329. That he did the best he could in this case seems quite apparent. In Collins v. Town of Palm Beach, Fla. 1973, 272 So.2d 479, we manifested the view that there are compensation cases where a remand for further evidence would be a meaningless protraction, especially where it appears the JIC did the best he could from the nature of the case and its complexities. Dr. Lusskin was emphatic that he was unable to apportion the disability between the accidents. It is obvious the JIC agreed. Dr. Richards, too, was far from helpful to the JIC, being unable to give an authoritative and unequivocal opinion on an apportionment in the case.
It is our view the order of the JIC should be sustained. It appears to us the JIC's findings of ultimate facts as set forth in his order sufficiently follow the principles recently enunciated in the cases of Arroyo v. Crown Hotel, Fla. 1973, 275 So.2d 226; Federal Electric Corp. v. Best, Fla. 1973, 274 So.2d 886; Smith v. Lake *302 Butler Groves, Inc., Fla. 1973, 275 So.2d 229; Pierce v. Piper Aircraft Corp., Fla. 1973, 279 So.2d 281, and Wimberly v. Creamon's Chevrolet Company; Corporate Group Service, Inc., and Industrial Relations Commission, Fla., 284 So.2d 211, opinion filed October 11, 1973.
Accordingly, the order of the Industrial Relations Commission is quashed with direction to reinstate the order of the Judge of Industrial Claims herein.
It is so ordered.
ROBERTS, Acting C.J., and BOYD, McCAIN and DEKLE, JJ., concur.